IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

SEPTEMBER 1998 SESSION



**FILED**

**May 5, 1999**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 03C01-9708-CC-00371 |
| | ) | |
| | ) | Blount County |
| v. | ) | |
| | ) | Honorable D. Kelly Thomas, Jr., Judge |
| | ) | |
| JIMMY DAVIS, | ) | (Delivery of more than one-half gram of |
| | ) | cocaine -- two counts) |
| | ) | |
| Appellant. | ) | |

For the Appellant:

Mack Garner
District Public Defender
421 High Street
Maryville, TN 37804
(AT TRIAL AND ON APPEAL)

Gerald L. Gulley, Jr.
P.O. Box 1708
Knoxville, TN 37901-1708
(ON APPEAL)

For the Appellee:

John Knox Walkup
Attorney General of Tennessee
        and
Todd R. Kelley
Assistant Attorney General of Tennessee
425 Fifth Avenue North
Nashville, TN 37243-0493

Michael L. Flynn
District Attorney General
        and
Philip Morton
Assistant District Attorney General
Blount County Courthouse
363 Court Street
Maryville, TN 37804

OPINION FILED:_____

CONVICTIONS AFFIRMED; REMANDED FOR RESENTENCING

Joseph M. Tipton
Judge

# O P I N I O N

The defendant, Jimmy Davis, appeals as of right following his convictions by a jury in the Blount County Circuit Court for two counts of delivering more than one-half gram of cocaine, a Class B felony. He was sentenced for each conviction as a Range I, standard offender to nine years confinement in the Department of Correction, to be served concurrently. He received a fifty-thousand-dollar fine for each conviction. The defendant presents the following issues for our review:

> (1) whether the evidence is sufficient to support his convictions;
>
> (2) whether the trial court erred by refusing to allow cross-examination regarding a confidential informant's use of drugs while on probation;
>
> (3) whether the trial court erred by allowing the jury, during deliberations, to listen to an audiotape of the drug transaction; and
>
> (4) whether the trial court erred by imposing an excessive sentence and by failing to sentence the defendant to probation or community corrections.

We affirm the convictions but remand the case for resentencing.

At trial, Cheryl Denise Androws testified that she contacted the Blount Metro Narcotics Unit (BMNU) in 1996 because she was using cocaine and needed help with treatment. She said that she had convictions for burglary and for writing worthless checks. She said she wanted to do undercover work for the BMNU because she needed money. She said the BMNU employed her to purchase drugs, which she did eight or nine times. She said that she was paid fifty dollars for each transaction. She said she received drug treatment at Cornerstone and is drug-free.

Ms. Androws testified that she knew the defendant by the name Sam and had seen him about sixty times. She said that on September 6, 1996, she called a house on Howe Street and spoke to the defendant. She said she asked the defendant

2

if she could buy cocaine from him, and she arranged to meet him at the house. She said she then called the BMNU and spoke with Agent Scott Johnson. She said she went to the BMNU office where she was wired with an electronic audiotape recorder. She testified that agents searched both her and her car before she was wired. She said she received one hundred dollars with which to purchase the drugs. She explained that the agents followed her to the house on Howe Street, and she went inside the house.

Ms. Androws testified that once inside the house, she talked to the defendant for a while because she wanted to get his full name, and she said the defendant told her his last name was Davis. She said she gave him one hundred dollars, and he gave her five packages of cocaine. She said another man whom she did not know was present during the transaction. She said she then drove to a predetermined location to meet with the agents, and she gave them the drugs. She said that the agents searched both her and her car again. She testified that she was absolutely certain that the defendant was the man who sold her the drugs. She said she later learned that the audiotape had malfunctioned, and the transaction was not recorded. She stated that after the first transaction, she went to the BMNU office and identified a photograph of the defendant.

Ms. Androws testified that on September 17, 1996, she participated in another drug transaction with the defendant. She testified that she went through the same process that she had gone through for the first transaction. She testified that while she was at the house on Howe Street purchasing the drugs from the defendant, someone handed her a marijuana cigarette. She testified that after the transaction, she met with the agents and turned over the marijuana cigarette and the cocaine. She testified that the second transaction was successfully recorded, and a tape of the transaction was played for the jury.

3

On cross-examination, Ms. Androws testified that she had been involved with cocaine for six or seven years but that at the time of the trial, she had not used cocaine for almost one year. She said she stopped using cocaine in August 1996 when she started treatment. She admitted that she had more than five worthless check convictions. She also admitted that she was convicted of burglary in March 1994 and pled guilty to forgery in May 1995. She stated that she made about nine transactions for the BMNU and that she earned about four hundred and fifty dollars. She testified that she did not have a regular job during the period in which she worked for the BMNU. She admitted that she was charged on July 31, 1996 with stealing money from Cost-Cutters and that she was arrested and charged in November with burglary and theft from Wal-Mart while she was on community corrections for a prior conviction. She said the charges were dismissed upon her agreement to pay restitution, which she paid in full. She denied that the Wal-Mart charges were dismissed as part of her agreement with the BMNU. She stated that she did not use cocaine after she began working with the BMNU.

Eric Gutridge testified that he is an officer with the BMNU. He stated that he knew the defendant in September 1996 and that he helped set up the first transaction between the defendant and Ms. Androws. He said that although the audiotape recorder malfunctioned, he listened to the transaction as it was happening. He said that during the transaction, Ms. Androws talked to a man she called Sam, and the man told her that his last name was Davis. Officer Gutridge said Ms. Androws bought cocaine from the man and then met him and other officers to turn over the drugs. Officer Gutridge stated that he had previously seen the defendant's car at the house on Howe Street, and after the first transaction, he showed the defendant's picture to Ms. Androws who identified him immediately as the man she knew as Sam. He testified that on November 4, 1996, after the second transaction, he obtained a warrant and searched the house at Howe Street. He said he found a document from the Tennessee Department of Safety bearing the name Jimmy Davis.

4

On cross-examination, Officer Gutridge testified that he was present when Ms. Androws came to the BMNU office and volunteered her services. He said Ms. Androws said that she needed money for drug treatment and that she wanted to purchase drugs for them. He said Ms. Androws did not tell them that she had felony convictions. He said that during the first transaction, Ms. Androws was in the house no longer than five minutes. He stated that the BMNU did not agree to do anything for Ms. Androws except pay her for her work.

Scott Johnson testified that he is a narcotics agent with the Blount County Sheriff's Department. He said he spoke to Ms. Androws when she first called the BMNU to volunteer her services. He said he obtained Ms. Androws' criminal history and found it to be minimal compared to other informants. He said that neither he nor anyone acting on behalf of the BMNU had any deal with Ms. Androws, other than to pay her for each transaction. With respect to the first transaction, he said he told Ms. Androws to try to get Sam to tell her his last name.

The defendant testified that he did not sell or deliver cocaine to Ms. Androws. He stated that he was at work on the days of the transactions. He admitted that he had seen Ms. Androws before at the house on Howe Street. He said that he lived with his mother but that he would go to the house on Howe Street to watch cable television. He said he would go to the house three or four times per week, and a lot of people were always there. He testified that he worked for Fawn Industrial from 8:00 a.m. to 4:00 p.m. and that he usually went home after work. He said he did not remember going to the Howe Street house or seeing Ms. Androws on September 6. He said he might have gone to the house on the evening of September 17 to watch boxing, but he did not remember seeing Ms. Androws that night. He said that the voice on the audiotape was not his and that Ms. Androws was talking to two men named Gene and Duke. He said he did not recognize the voices on the audiotape.

5

On cross-examination, the defendant admitted that he might lose his job if convicted. He said he did not bring to court any documents verifying that he worked on the days of the transactions. He said the Department of Safety document probably fell out of his pocket when he was watching television at the house. He admitted that sometimes people call him Sam. He said he does not drink or use drugs.

In rebuttal, the state called Scott Johnson. Agent Johnson testified that the September 6 transaction began at 4:58 p.m., and the September 17 transaction began at 5:55 p.m.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support his convictions because Ms. Androws, who has an extensive criminal history, was the only person to testify that the defendant was the person from whom she purchased drugs. The state argues that the evidence is sufficient. We agree.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Viewed in this light, the evidence is sufficient. Ms. Androws testified that she purchased drugs from the defendant on September 6 and 17. She stated that she was positive she purchased the drugs from the defendant. She identified a photograph

6

of the defendant after she made the first purchase. She testified that she had seen the defendant several times before the transactions and that she knew the defendant as Sam. The tape-recorded conversation of the second transaction reveals that Ms. Androws called the person from whom she bought the drugs Sam. The defendant admitted that people called him Sam. Despite Ms. Androws' criminal history, of which the jury was apprised, the jury convicted the defendant. The evidence sufficiently supports those convictions.

## II. CROSS-EXAMINATION OF ANDROWS

The defendant contends that the trial court erred by not allowing him to impeach the credibility of Ms. Androws during cross-examination. Specifically, he argues that he should have been allowed to cross-examine Ms. Androws about the fact that she used drugs while she was on probation because the fact that she violated the terms of her probation relates to her credibility. He further argues that the error was not harmless in light of the fact that Ms. Androws was the state's key witness and the only witness who could identify the defendant. The state argues that the trial court properly limited the cross-examination because Ms. Androws had already admitted to using drugs, and the fact that she was on probation when she did so was not probative of her credibility.

Pursuant to Rule 401, Tenn. R. Evid., evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Furthermore, relevant evidence may be excluded if its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Tenn. R. Evid. 403. The trial court has discretion in determining whether evidence meets the test for relevancy. State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995). Assessing the probative value and danger of unfair prejudice

7

regarding the evidence also falls within the trial court's discretion. State v. Burlison, 868 S.W.2d 713, 720-21 (Tenn. Crim. App. 1993). This court will only reverse a trial court's decision if the trial court abused its discretion. State v. Williamson, 919 S.W.2d 69, 78 (Tenn. Crim. App. 1995). Furthermore, the trial court has discretion to limit cross-examination. State v. Dishman, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995). "Appellate courts may not disturb limits on cross-examination except when there has been an unreasonable restriction on the right." State v. Fowler, 213 Tenn. 239, 253, 373 S.W.2d 460, 466 (1963).

The record shows that the trial court found that Ms. Androws had admitted to using drugs. The court determined that the fact that Ms. Androws was on probation when she used drugs did not relate to her credibility. However, we believe that Ms. Androws' inability to obey the law as a condition of her probation is probative of her ability to obey the law and tell the truth on the witness stand. See Tenn. R. Evid. 608 (b) (stating that specific conduct used to impeach a witness must relate to that witness's character for truthfulness or untruthfulness). The evidence is relevant to Ms. Androws' truthfulness and would assist the jury in assessing her credibility.

To deny the defendant his right to an effective cross-examination is "constitutional error of the first magnitude" and may violate the defendant's right to a fair trial. State v. Hill, 598 S.W.2d 815, 819 (Tenn. Crim. App. 1980). However, in the present case, we do not believe that the exclusion of that particular information was harmful given the other evidence presented. Ms. Androws was candid with the jury about her extensive criminal background, which included crimes involving dishonesty such as theft, forgery and burglary. Furthermore, she admitted that she was charged with stealing money from Cost-Cutters and pled guilty to burglary and theft from Wal-Mart while she was on community corrections for another conviction. Thus, the jury was apprised of Ms. Androws' inability to obey the law and her propensity to engage in

8

dishonest behavior even after agreeing to abide by the law as a condition of alternative sentencing. The information the defendant sought to elicit, although relevant and admissible, would have been cumulative. Under these facts, we have no doubt that the trial court's limitation of cross-examination did not deprive the defendant of a fair trial.

### III. USE OF AUDIOTAPE IN JURY DELIBERATIONS

The defendant contends that the trial court erred by allowing the jury, at the jury's request, to listen to the audiotape recording of the September 17 drug transaction during its deliberations. He argues that documentary evidence should only be allowed into the jury room with the consent of both parties. See State v. Braden, 867 S.W.2d 750, 750 (Tenn. Crim. App. 1993). The state argues that the jury was entitled to listen to the audiotape pursuant to Tenn. R. Crim. P. 30.01.

Rule 30.01, Tenn. R. Crim. P., effective July 1, 1995, controls the determination of this issue and provides that "the jury shall take to the jury room all exhibits and writings which have been received in evidence, except depositions, for their examination during deliberations, unless the court for good cause, determines that an exhibit should not be taken to the jury room." The defendant contends that the audiotape was the functional equivalent of a deposition and, as such, should not have been taken to the jury room. We disagree.

This court has considered whether a tape-recorded statement, in which a defendant admitted to the police that his actions caused the death of a victim, is the functional equivalent of a deposition such that it should not be allowed in the jury room during deliberations pursuant to Rule 30.01. State v. James Clayton Young, Jr., No. 01C01-9605-CC-00208, Rutherford County (Tenn. Crim. App. May 22, 1998). In Young, the defendant argued that his tape-recorded statement was just like a

9

deposition and should not have been sent to the jury room. This court concluded otherwise, stating:

> We are not convinced by the defendant's contention that a tape-recorded statement is the equivalent of a deposition for the purposes of this rule. Depositions are transcripts of sworn testimony given with the assistance of counsel and in the presence of a court reporter. When a deposition is entered into evidence, it becomes part of the body of testimony as though it had been presented at trial. If the deposition were taken to the jury room during deliberations, a danger exists that the jury might place too great an emphasis on this one portion of the testimony. A tape-recorded statement is more akin to a videotape of a crime scene. The rule requires its presence in the jury room during deliberation unless the trial judge has good cause for excluding it.

James Clayton Young, slip op. at 35.

We believe the same reasoning applies even more to the present case. If anything, the audiotape of the drug transaction in the present case is less like a deposition than the audiotaped statement to authorities at issue in Young and more like a videotape of a crime scene. In fact, it is simply an audiotape of a crime as it is occurring. We do not believe that the audiotape is the functional equivalent of a deposition such that it should be excluded from the jury room pursuant to Rule 30.01.

## IV. SENTENCING

The defendant contends that the trial court imposed an excessive sentence and that he should have received probation or community corrections. The state argues that the sentence is not excessive and that the defendant is not eligible for probation, although it concedes that the trial court erroneously considered the defendant ineligible for community corrections based on the length of his sentence. Both the defendant and the state urge this court to remand the case to the trial court for consideration of whether the defendant should receive community corrections. Because the record indicates that the trial court erroneously determined that the defendant was ineligible for community corrections because of the length of his

10

sentence, we conclude that the case should be remanded for the trial court to determine whether the defendant should receive community corrections.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is now on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1995).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf and (7) the

11

potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229 (Tenn. 1986).

The sentence to be imposed by the trial court for a Class B felony is presumptively the minimum in the range when there are no enhancement or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and then reduce the sentence as appropriate for any mitigating factors. Tenn. Code Ann. § 40-35-210(d) and (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169.

The defendant testified at the sentencing hearing that he had worked at Fawn Industrial for three years and that he lived with his mother. He stated that he previously worked at ALCOA for seventeen years but that he lost his job because of a misdemeanor marijuana conviction. He testified that he is a high school graduate and completed six months of technical training in the 1960's. He said that he had no previous felony convictions. He stated that he had three grown children and one minor child for whom he paid child support. He stated that when he lost his job at ALCOA, he fell behind in his child support payments. He said that Fawn Industrial conducted several drug tests on him which were all negative. He said that he had not used marijuana or cocaine in three years and that he gave up alcohol fifteen years ago. He said that if he were released from jail, he would live with his mother and abide by any probation requirements. He maintained that he did not commit the offenses for which he was convicted in the present case.

12

A presentence report was introduced into evidence. It reflects that the then fifty-three-year-old defendant had convictions for driving on a revoked license in 1996, marijuana possession in 1994 and 1981, unlawful use of drug paraphernalia in 1994, assault in 1985, driving under the influence in 1976, and speeding in 1973. The report also reflects that the defendant received substance abuse treatment in 1994 and is five thousand dollars in arrears on child support payments.

The trial court sentenced the defendant to nine years confinement in the Department of Correction for each conviction, to be served concurrently. As an enhancement factor, the trial court gave considerable weight to the fact that the defendant "has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(1). The trial court also considered, as mitigating factors, the fact that the defendant's conduct neither caused nor threatened serious bodily injury and the fact that no firearm was used during the offense. Tenn. Code Ann. §§ 40-35-113 (1), (13).

## A. LENGTH OF SENTENCE

The defendant contends that a nine-year sentence is excessive. Specifically, he argues that the trial court abused its discretion by giving more weight to the one enhancement factor than it gave to the two mitigating factors. He also argues that the trial court erred by not considering in mitigation the fact that the defendant had a stable work history, supported his minor child, and successfully completed a substance abuse treatment program. See Tenn. Code Ann. § 40-35-113(13). The state contends that a nine-year sentence is supported by the record. We agree.

The weight to be afforded an enhancement or mitigating factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Tenn.

13

Code Ann. § 40-35-210, Sentencing Commission Comments; <u>Moss</u>, 727 S.W.2d at 237; <u>see</u> <u>Ashby</u>, 823 S.W.2d at 169. Thus, the trial court was entitled to give greater weight to the enhancement factor than to the two mitigating factors. Although the defendant complains that the trial court did not consider his stable work history and child support, we note that the defendant was fired from his employment with ALCOA because of a drug conviction, and he is five thousand dollars in arrears on his child support payments. The trial court did not abuse its discretion by not considering these factors in mitigation, nor has the defendant shown how the trial court abused its discretion by failing to consider his completion of a drug treatment program in mitigation. We believe the record supports a nine-year sentence.

## B. PROBATION

Next, the defendant contends that the trial court erred by not granting him probation. However, the defendant received a nine-year sentence and is, therefore, statutorily ineligible for probation. Tenn. Code Ann. § 40-35-303(a). The defendant argues that the trial court sentenced him to nine years to prevent him from being eligible for probation. The defendant offers no support for this contention and because we have concluded that the record supports the nine-year sentence, we conclude that this issue is without merit.

## C. COMMUNITY CORRECTIONS

Finally, the defendant contends that the trial court erred by not sentencing him to community corrections. He argues that the trial court erroneously concluded that because he received a nine-year sentence and was ineligible for probation, he was also ineligible for community corrections. The state concedes that the trial court erred by not considering community corrections.

14

The legislature has determined that an offender who meets the following minimum criteria shall be considered eligible for community corrections:

> (1) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (2) Persons who are convicted of . . . drug/alcohol-related felony offenses . . . .;
>
> (3) Persons who are convicted of nonviolent felony offenses;
>
> (4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
>
> (6) Persons who do not demonstrate a pattern of committing violent offenses; and
>
> Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a).

The record reveals that in sentencing the defendant, the trial court stated as follows:

> I think he probably is an appropriate candidate to serve a time in jail and the rest of it on Community Corrections, but according to these cases that I read, State vs. Keel and the State vs. Henry Smith, recent cases, and they seem to say that he's not, that the legislature has already ruled that that's not a possibility. So, I'm not going to order it in the face of these higher court decisions saying you can't do it. I'm not going to do it.
>
> . . . .
>
> But the way these read, it's pretty clear to me. I don't think there's anything else to do. But as far as the number of years, I just -- looking at this case and the evidence that I've heard and the enhancing factors, I don't think an argument can be made that's it [sic] a minimum eight-year sentence.

The record shows that the trial court believed the defendant to be ineligible for community corrections based upon the length of the defendant's sentence. As the defendant argues and the state concedes, this is incorrect. Unlike the probation

15

statute, subsection (a) of Tenn. Code Ann. § 40-36-106 does not specify a maximum sentence length over which a defendant would be precluded from receiving community corrections. See also, State v. Lanny Crowe, No. 01C01-9503-CC-00064, Wayne County, slip op. at 2 (Tenn. Crim. App. July 6, 1995) ("An accused who meets the minimum criteria set forth in subsection (a) of Tenn. Code Ann. § 40-36-106 is eligible for sentencing pursuant to the Act regardless of the length of the sentence imposed by the trial court. Neither the Act nor any other statute makes the length of the accused's sentence a criteria for eligibility"). Because the trial court erroneously believed the defendant to be ineligible for community corrections, we remand the case to the trial court for a determination of whether the defendant should receive community corrections, confinement, or a combination thereof.

In consideration of the foregoing and the record as a whole, we affirm the convictions and the nine-year sentences. We remand the case to the trial court for consideration of whether the defendant should receive community corrections.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
John H. Peay, Judge

_____
David G. Hayes, Judge

16